IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
 )
        Plaintiff, )
 )
  v. )   1:06CV00889
 )
SHEFFIELD FINANCIAL LLC, )
 )
        Defendant. )

## ORDER

This matter is before the court on Defendant's motion to compel (docket no. 16). For reasons set forth below, Defendant's motion will be granted and reasonable costs and expenses associated with this motion will be awarded to Defendant upon a proper showing as set out herein.

## Background

As Plaintiff, the Equal Employment Opportunity Commission ("EEOC") brought this case on behalf of Ahmed Ibrahim, a native of Egypt, alleging termination discrimination due to Mr. Ibrahim's national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* Specifically, the EEOC claims that Mr. Ibrahim was fired by Defendant after only a half-day's work because of his Arabic accent.

Defendant Sheffield Financial LLC ("Sheffield") filed this motion to compel

1

after communicating with and requesting from the EEOC medical records relating to Mr. Ibrahim's health care, mental health treatment, counseling, psychology, psychiatry, pharmaceutical prescriptions, and other medical issues. In addition, Defendant seeks complete responses to interrogatories concerning Mr. Ibrahim's medical background. The interrogatories and requests for production at issue under this motion to compel by Defendant are:

Interrogatory No. 4:

Describe any and all health care treatment of any type sought by Ibrahim, including medical, chiropractic, therapeutic, rehabilitative, psychotherapy, counseling, and other treatment or therapy that Ibrahim has undergone from January 1, 2000, to the present. Please include in this description names, addresses and telephone numbers of all health care providers, the dates of all treatment, all diagnoses rendered and treatment modalities prescribed.

Interrogatory No. 5:

Describe any and all mental health treatment of any type, including psychiatric, psychotherapeutic, counseling, medication and other treatment or therapy, that Ibrahim has undergone at any time, including individual treatment, marital treatment, and family treatment. Please include in this description names, addresses and telephone numbers of all health care providers, the dates of all treatment, all diagnoses rendered and treatment modalities prescribed.

Interrogatory No. 6:

Identify by name, address and telephone number all pharmacies at which Ibrahim has filled prescriptions from January 1, 2000, to the present.

Request for Production No. 11:

All records documenting medical and other health care treatment of any type undergone by Ibrahim since January 1, 2000, including but not limited to documentation of medical and chiropractic treatment, counseling, therapy, rehabilitation, work hardening and health care treatment of any other type. In

addition to producing these documents, please provide an authorization and release signed by Ibrahim allowing defendant to obtain these records directly from the health care providers for Ibrahim. A proposed authorization for the release of health care records is attached.

Request for Production No. 12:

All records relating to counseling, psychotherapy, psychiatry, or other mental health treatment that Ibrahim has undergone at any time. In addition to producing these documents, please provide authorizations and releases signed by Ibrahim allowing defendant to obtain these records directly from the health care providers. A proposed authorization for the release of health care records is attached.

Request for Production No. 13:

All pharmacy records and other documents regarding medications prescribed by health care professionals for Ibrahim from January 1, 2000 to the present date. In addition to producing these documents, please provide authorizations and releases signed by Ibrahim allowing defendant to obtain these records directly from the pharmacies. A proposed authorization for the release of health care records is attached.

(Def. Br. 2-3.)

On February 26, 2007, Sheffield served these requests, with others, to the EEOC. The EEOC then served limited responses to these requests on March 14. (Def. Br. 3.) First, as to interrogatory #5, the EEOC claimed it was overbroad and irrelevant. The EEOC also stated that the interrogatory was not reasonably calculated to lead to the discovery of admissible evidence. Finally, the EEOC declared that Mr. Ibrahim's mental state and medical history are not at issue because the EEOC is seeking only garden-variety compensatory damages for Mr. Ibrahim. With that said, Plaintiff admitted that Mr. Ibrahim had not received any type of mental health treatment described in interrogatory #5.

3

In response to interrogatory #4, the EEOC lodged the same objections as stated in interrogatory #5, except for an additional note that Mr. Ibrahim had sought treatment for a blood clot in his left leg in 2004 at a Winston-Salem hospital. "He was prescribed an oral medication to thin his blood and remove his clot." (Pl. Br. 3.) Likewise, Plaintiff objected to interrogatory #6 with the same rationale as the previous two and stated that Mr. Ibrahim had received the prescription (just mentioned) to thin his blood and remove the clot at a Walgreens pharmacy in 2004. (Pl. Br. 4-5.)

Similarly, the EEOC gave the same rationale for not providing the necessary medical, mental health, and pharmaceutical records that Defendant sought in its request for production of documents—that is, the EEOC stated that the documents were overbroad, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and Mr. Ibrahim's medical and mental history are not at issue. The EEOC further objected to the request for Mr. Ibrahim's medical records on the basis that it would "unnecessarily invade Mr. Ibrahim's personal privacy." (Pl. Br. 6.)

Defendant then contacted Plaintiff on March 20, 2007, with a letter detailing the deficiencies in Plaintiff's responses (or lack of response) to Defendant's discovery requests, and Defendant requested complete responses by March 30, 2007. Defendant also provided copies of two cases where the court granted discovery requests when a plaintiff sought compensatory damages for emotional distress. *See Coffin v. Bridges*, 72 F.3d 126, 1995 WL 729489, at *2 (4th Cir. 1995)

4

(unpublished) (stating that a plaintiff's medical history and health care records are discoverable when compensatory damages are sought; plaintiff alleged "harm" as element of negligence claim; plaintiff's refusal to comply with defendant's discovery requests resulted in granting of motion to compel); *Teague v. Target Corp.*, No. 3:06cv191, 2006 WL 3690642, at *1 (W.D.N.C. Dec. 11, 2006) (where the court ordered production of information identifying plaintiff's health care providers, pharmacies, as well as signed authorizations for the release of medical and pharmacy records, stating that "[s]ince Plaintiff is seeking compensatory damages for emotional distress, it is clear that the information and records sought by the Defendant are discoverable"). Defendant also invited the EEOC to reply with any case law supporting the EEOC's refusal to provide the necessary documents and answer the interrogatories. The EEOC responded via telephone on April 4, 2007, declaring again that the EEOC did not believe Mr. Ibrahim's health, mental, and pharmaceutical records and background were at issue because the EEOC sought only garden-variety compensatory damages.

Defendant then made a final attempt to persuade the EEOC to comply with the discovery requests on April 5, 2007. In a letter to Plaintiff, Defendant included another case, *Anderson v. Duke Energy Corp.*, and asked Plaintiff to consider this case along with the previous cases from the March 20th letter. *See Anderson,* Civ. Action No. 3:06cv399, 2007 WL 1041187, at *2 (W.D.N.C. Apr. 4, 2007) (where the court granted defendant's motion to compel production of medical information and

health care records where plaintiff sought compensatory damages in connection with a Title VII claim). Also, Defendant invited Plaintiff to *again* cite to any case law authority supporting Defendant's assertion that it was not required to disclose the requested information. Plaintiff's only response was the following:

> If you know of any binding authority holding that Congress's intent in adding compensatory damages to the remedies available under Title VII was to open up a claimant such as Mr. Ibrahim, who worked for the company for under a day, to intrusive scrutiny of all his private medical and pharmaceutical information dating back five years, simply because garden-variety compensatory damages are sought by EEOC, you can forward that to me and we will consider it.

Defendant replied that it would seek a motion to compel with this court.

## **Discussion**

The EEOC's main rationale for objecting to the interrogatories and production of medical records is that the required responses would involve too great an intrusion on Mr. Ibrahim's privacy and that the medical records do not need to be produced when a plaintiff alleges only "garden variety" compensatory damages related to his Title VII claim. For the following reasons, I reject both arguments.

> Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:
>
> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons have knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in this action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

6

The rules of discovery are to be accorded broad and liberal construction. *See Herbert v. Lando,* 441 U.S. 153, 177 (1979); and *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). That is, "Rule 26(b)(1) expressly permits 'discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.' ... Relevancy[,] under this rule has been broadly construed to encompass "any possibility' that the information sought may be relevant to the claim or defense of any party.'" *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005) (citing *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001)). A litigant is not, however, entitled to conduct discovery that is intended to harass, annoy, embarrass, oppress or, that causes undue burden or expense to the opposing party. *See* FED. R. CIV. P. 26(c). Finally, courts have held that "[w]hen the discovery sought appears relevant . . . the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under . . . FED. R. CIV. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364, at *2 (D. Kan. Jan. 31, 2002). Plaintiff has met neither of these two burdens.

First, the requested discovery is clearly relevant to Plaintiff's claims of damages within the meaning of Rule 26. That is, the Complaint asks the court to "[o]rder Defendant to make whole Ahmed Ibrahim by providing compensation for

7

non-pecuniary losses resulting from the unlawful practices complained of . . ., including past and future emotional distress, humiliation, anxiety, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial." (Compl., Prayer for Relief, ¶ E.) Since Plaintiff seeks compensatory damages for "past and future emotional distress, humiliation, anxiety, inconvenience, and loss of enjoyment of life," Defendant is entitled to discover information concerning Mr. Ibrahim's medical, mental, and pharmaceutical history to determine if any prior event may affect his demand for damages. As the Colorado district court stated in *LeFave v. Symbios, Inc.*, "[m]edical records information is relevant to plaintiff's claim for emotional distress damages. The information is further relevant to the preparation of defendants' defenses against plaintiff's emotional distress damages claim, because her medical records may reveal stressors unrelated to defendants which may have affected plaintiff's emotional well being." *LeFave*, No. CIV. A. 99-Z-1217, 2000 WL 1644154, at *2 (D. Colo. Apr. 14, 2000) (also declaring that "the records will be produced under a confidentiality order").

When a plaintiff seeks damages for mental anguish, "[t]he medical and psychological information sought by [] interrogatories and requests for production are relevant as to both causation and the extent of plaintiff's alleged injuries and damages." *See Garrett*, 2002 WL 181364, at *2 (in a Title VII case, where plaintiff sought compensatory damages for "emotional pain, suffering, mental anguish, inconvenience and loss of enjoyment of life"); s*ee also McCarthy v. Se. Pa. Transp.*

8

*Auth.*, No. CIV. A. 92-7188, 1993 WL 409858, at *2 (E.D. Pa. Oct. 13, 1993) (in a Title VII case, where the court granted defendant's motion to compel plaintiff to produce her medical records, which might contain evidence regarding alternative stressors contributing to her emotional distress, when plaintiff sought compensatory damages for mental or emotional harm or distress); *EEOC v. Danka Indus., Inc.*, 990 F. Supp. 1138, 1141-43 (E.D. Mo. 1997) (in a Title VII case, where the court granted defendant's motion to compel production of medical records where plaintiffs sought damages for emotional distress resulting from alleged sexual harassment). If Plaintiff seeks damages on the basis of emotional distress, humiliation, anxiety, and other psychological factors, Defendant must be able to determine how much of Mr. Ibrahim's emotional distress, etc. was caused by his termination. Allowing Defendant to review Mr. Ibrahim's medical records will shed light on any other contributing factors or events prior to Mr. Ibrahim's termination that might have caused him emotional distress or anxiety. Furthermore, the fact that Plaintiff may not be planning to present any expert testimony in support of Mr. Ibrahim's emotional distress claim does not make this information any less relevant. *Garrett*, 2002 WL 181364, at *2 (stating that "no case law supports Plaintiff's contention that this information is discoverable only if [he] were planning to present expert testimony regarding h[is] mental and emotional condition").

Nonetheless, the EEOC still contends that medical records are not discoverable when only "garden-variety" incidental compensatory damage claims are

at issue. (Pl. Br. 8.) The case law cited by the EEOC to support this position, however, overwhelmingly addresses requests for medical examinations under FED. R. CIV. P. 35 rather than requests for general discovery under FED. R. CIV. P. 26, the rule at issue in this case.[1] *See Ricks v. Abbott Labs.*, 198 F.R.D. 647, 649-50 (D. Md. 2001). This court's consideration, however, of the relevancy of Mr. Ibrahim's general medical records and psychological history is governed by Rule 26(b) and not Rule 35(a). *See Bowen v. Parking Auth. of City of Camden*, 214 F.R.D. 188, 195 (D.N.J. 2003). Courts have observed that "[t]he finding that the defendants are not entitled to a Rule 35 mental examination does not . . . preclude the defendants from obtaining discovery concerning the plaintiff's psychiatric history." *Bowen*, 214 F.R.D. at 195. Additional support for permitting Defendant's motion to compel in light of Plaintiff's "garden-variety" compensatory damages claim comes from *Owens v. Sprint/United Management Co.*, where the court elaborated on the difference between a Rule 35 and a Rule 26 claim:

> The fact that these damages claims may be the 'garden variety' of damage claims for emotional distress does not automatically exempt them from discovery [under Rule 26]. Plaintiff's argument is more applicable in the context of a Rule 35 motion to compel physical or mental examinations, where courts have found that a 'garden variety' emotional distress claim . . . does not place the plaintiff's mental condition 'in controversy' for purposes of justifying a mental examination under Rule 35.

---

[1] Moreover, the cases cited by Plaintiff that do not directly discuss Rule 35 address instead claims of waiver of the psychotherapist-patient privilege, which is not at issue in this case.

221 F.R.D. 657, 659-60 (D. Kan. 2004). *See also LeFave*, 2000 WL 1644154, at *2 (in a Title VII case, stating that plaintiff's medical records were relevant to her claim for emotional distress damages even though plaintiff had only asked for damages for pain and suffering, embarrassment and humiliation and did not assert a separate claim for intentional or negligent infliction of emotional distress, a specific mental or physical injury, or severe emotional distress). Thus, "a party's medical condition can be relevant [under Rule 26], yet not be 'in controversy' within the meaning of Rule 35." *Ricks v. Abbott Labs.*, 198 F.R.D. 647, 650 (D. Md. 2001). In fact, *Ricks* held that the employee's mental condition was not in controversy for the purpose of a Rule 35 mental examination, but the court stated that its holding did not conflict with its previous denial of plaintiff's motion to quash the defendant's subpoena seeking plaintiff's medical records. *Id.* at 650.

In addition, as Defendant correctly notes, no physician (or psychiatric) privilege exists here because the EEOC did not assert a privilege, and, according to the EEOC, Mr. Ibrahim does not have a history of mental health treatment. (Pl. Br. 4.) Furthermore, no privilege exists under federal common law that would protect a claimant's general medical records—only a limited psychotherapist-patient privilege exists under federal common law. *LeFave*, 2000 WL 1644154, at *2.

The EEOC also argues generally that Mr. Ibrahim's medical and pharmaceutical records are private and should therefore be protected. In support of this contention, the EEOC states that "federal courts [have] recognize[d] that

patients have an interest in the privacy of their medical records." *In re Grand Jury Subpoena John Doe No. A01-209*, 197 F. Supp. 2d 512, 514 (E.D. Va. 2002). To be sure, federal courts do recognize that patients have an interest in the privacy of their medical records, but this interest is not an absolute right nor is it dispositive in all circumstances. *Id.* Indeed, in the case cited by Plaintiff (*In re John Doe*), the court actually granted the motion to compel the medical records at issue. *Id.* at 515. Moreover, Mr. Ibrahim's privacy will be adequately protected because a Consent Protective Order has been entered for all documents and things produced in discovery. Federal courts have held that "the privacy of any individual and the confidentiality of the files may be protected by an appropriate protective order." *Willis v. Golden Rule Ins. Co.*, No. Civ. 3-89-0189, 1991 WL 350038, at *3 (E.D. Tenn. Aug. 5, 1991). Therefore, as Mr. Ibrahim's privacy is protected by a Consent Protective Order, the EEOC's contention that Mr. Ibrahim's privacy will be invaded is unwarranted.

Finally, the burden or expense of the proposed discovery does not outweigh its likely benefits. *See Ricks*, 198 F.R.D. at 649. Defendant has asked only that Plaintiff sign an authorized release form giving Defendant access to Mr. Ibrahim's medical records. The EEOC does not have to spend significant resources to produce Mr. Ibrahim's medical records; providing signed authorizations for the release of the medical records is all the EEOC has to do. In this regard, federal courts have held that obtaining a party's written consent for the release of medical

records "represents the least expensive and most efficient means of procuring information from medical or counseling providers." *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 649 (N.D. Ind. 1991) (granting defendant's motion to compel execution of medical release in Title VII case where plaintiff sought compensatory damages for emotional distress). In sum, because a Consent Protective Order has been entered—covering all documents produced in discovery for this case—and because there is ample case law to the contrary of EEOC's "garden variety" contention, I will grant Defendant's motion to compel.

Attorney's Fees and Costs under Rule 37(a)(4)(A)

Next, Defendant contends that the court should award Defendant costs and expenses incurred in bringing this motion due to Plaintiff's lack of a good faith effort to resolve the dispute. The federal rules provide that a party making a motion to compel discovery may receive all reasonable costs and fees from the non-moving party if the moving party first conferred in good faith with the opposing party and the opposing party had no substantially justifiable reason for objecting:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

13

FED. R. CIV. P. 37(a)(4)(A). In support of its argument for attorney's fees, Defendant notes that it contacted the EEOC twice with case law clearly supporting its position to seek full discovery disclosures from the EEOC. The EEOC responded that the case law sent by Defendant was unpersuasive and further observed that the EEOC has not asserted a specific claim for intentional infliction of emotional distress; has not alleged a specific mental or psychiatric injury; has not alleged physical injury; has not alleged unusually severe emotional distress; and has not described Mr. Abrahim's emotional distress in clinical terms. The EEOC further asserted:

> As stated previously, EEOC seeks garden-variety compensatory damages that flowed from [Defendant's] discrimination against Mr. Abrahim. . . . . If you know of any binding authority holding that Congress's intent in adding compensatory damages to the remedies available under Title VII was to open up a claimant such as Mr. Ibrahim, who worked for the company for under a day, to intrusive scrutiny of all his private medical and pharmaceutical information dating back five years, simply because garden-variety compensatory damages are sought by EEOC, you can forward that to me and we will consider it.

(*See* Def. Br., Ex. H.)

It is readily accepted that any assertion in law should be founded on appropriate authority for full recognition and support. A response by the EEOC demanding case law when Defendant had already produced three relevant cases has unnecessarily prolonged the case and hindered the parties from getting to the merits. Moreover, as noted, courts overwhelmingly hold that employers are entitled to Rule 26 discovery of medical records even in so-called "garden-variety" employment cases where plaintiffs allege damages due to emotional distress.

Perhaps if the EEOC had cited some authority to the contrary in its communications with Defendant before Defendant filed the motion to compel, I would consider not awarding fees and expenses to Defendant. In refusing to grant voluntary discovery, however, the EEOC offered nothing but an unsupported opinion in refusing to comply with Defendant's discovery requests. Still, it was Plaintiff's burden to substantiate its objections to the requested discovery, and Plaintiff failed to provide Defendant with substantial justifications for failing to comply with the discovery requests. Indeed, the EEOC's argument that the discovery was not relevant since Mr. Ibrahim had worked for only half a day before being terminated was a particularly weak basis for an objection. Furthermore, in opposing the motion to compel, Plaintiff cites to case law that either addresses Rule 35 rather than Rule 26 or that deals with waivers of the psychotherapist-patient privilege, which does not even apply here. In sum, I find that Plaintiff's refusal to comply with Defendant's discovery request was not substantially justified, and Defendant's motion for costs in bringing the motion to compel will be granted. *Accord EEOC v. Grief Bros. Corp.*, 218 F.R.D. 59, 64 (W.D.N.Y. 2003) (in an employment discrimination case, awarding Rule 37 costs to Defendant employer where EEOC's refusal to provide medical records was not substantially justified, where EEOC argued that emotional damage claims did not go beyond "garden-variety" compensatory damages).

**Conclusion**

    **IT IS THEREFORE ORDERED** that:

    1) Defendant's motion to compel (docket no. 16) is **GRANTED** and Plaintiff must forthwith fully and completely respond to the disputed discovery. Furthermore, Defendant will be awarded attorney's fees and costs incurred in bringing the motion to compel.

    2) Defendant is to submit within 10 calendar days of the filing date of this order affidavits detailing their costs and fees associated with this motion. Plaintiff will have 10 calendar days, after Defendant's submission, to respond.

                                                    WALLACE W. DIXON
                                                    United States Magistrate Judge

Durham, NC
June 13, 2007